## FIFTEENTH AMENDMENT TO THE OFFERING PLAN

Premises:

**Riverhouse One Rockefeller Park
One and Two River Terrace
Battery Park City
New York, New York 10282**

**This Amendment Modifies And Supplements The Terms Of The
Offering Plan Dated Approximately August 24, 2006, And Should
Be Read In Conjunction with Said Plan, as Amended.**

1. The Offering Plan is revised in part to reflect purchase price increases for certain Residential Units listed in Column numbered (3) of Schedule A located on pages 85 to 93 of the Offering Plan, as amended. The new purchase prices for those Residential Units are set forth below.

    | Unit | Offering Price |
    |------|----------------|
    | 5S   | $2,230,000.00  |
    | 10R  | $3,430,000.00  |
    | 11R  | $3,470,000.00  |
    | 12R  | $3,510,000.00  |
    | 14R  | $3,550,000.00  |
    | 15R  | $3,590,000.00  |

    Based on the restated purchase prices for certain Residential Units as set forth above, the Total Purchase Price of the Offering, as amended is now $580,480,000.00.

2. Except as herein defined, all capitalized terms used in this Amendment which are defined in the Offering Plan, as amended, shall have the respective meaning ascribed to such terms in the Offering Plan, as amended.

3. The Offering Plan, as amended and supplemented by this Amendment, is incorporated herein by reference with the same force and effect as if set forth at length.

4.    There are no other material changes to the terms of the Offering Plan, except those in this Amendment.

Dated: October 18, 2007

Sponsor:
Site 16/17 Development LLC
By:  BPC Mezz LLC
By:  Sheldrake Site 16/17 Development LLC,
     its Administrative Managing Member
By:  Site 16/17 Investors LLC, its Manager

By: _____
    J. Christopher Daly, Managing Member

# FOURTEENTH AMENDMENT TO THE OFFERING PLAN

## Premises:

## Riverhouse One Rockefeller Park
## One and Two River Terrace
## Battery Park City
## New York, New York 10282

**This Amendment Modifies And Supplements The Terms Of The Offering Plan Dated Approximately August 24, 2006, And Should Be Read In Conjunction with Said Plan, as Amended.**

---

1.  The Offering Plan is revised in part to reflect purchase price increases for certain Residential Units listed in Column numbered (3) of Schedule A located on pages 85 to 93 of the Offering Plan, as amended. The new purchase prices for those Residential Units are set forth below.

    | Unit | Offering Price |
    |------|----------------|
    | 10J | $2,825,000.00 |
    | 11J | $2,900,000.00 |
    | 12J | $2,975,000.00 |
    | PH31D | $3,700,000.00 |

    Based on the restated purchase prices for certain Residential Units as set forth above, the Total Purchase Price of the Offering, as amended is now $579,730,000.00.

2.  Except as herein defined, all capitalized terms used in this Amendment which are defined in the Offering Plan, as amended, shall have the respective meaning ascribed to such terms in the Offering Plan, as amended.

3.  The Offering Plan, as amended and supplemented by this Amendment, is incorporated herein by reference with the same force and effect as if set forth at length.

4. There are no other material changes to the terms of the Offering Plan, except those in this Amendment.

Dated: October 5, 2007

Sponsor:
Site 16/17 Development LLC
By: BPC Mezz LLC
By: Sheldrake Site 16/17 Development LLC,
    its Administrative Managing Member
By: Site 16/17 Investors LLC, its Manager

By: _____
    J. Christopher Daly, Managing Member

## EIGHTH AMENDMENT TO THE OFFERING PLAN

### Premises:

**Riverhouse One Rockefeller Park**
**One and Two River Terrace**
**Battery Park City**
**New York, New York 10282**

**This Amendment Modifies And Supplements The Terms Of The Offering Plan Dated Approximately August 24, 2006, And Should Be Read In Conjunction with Said Plan, as Amended.**

---

1.  The Offering Plan is revised in part to reflect purchase price increases and decreases for certain Residential Units listed in Column numbered (4) of Schedule A located on pages 85 to 93 of the Offering Plan, as amended. The new purchase prices for those Residential Units are set forth below.

| Unit | Offering Price |
|------|----------------|
| 3D | $1,620,000.00 |
| 4D | $1,645,000.00 |
| 5D | $1,670,000.00 |
| 6D | $1,695,000.00 |
| 6M | $1,575,000.00 |
| 6N | $1,860,000.00 |
| 7D | $1,720,000.00 |
| 7M | $1,590,000.00 |
| 7N | $1,875,000.00 |
| 8D | $1,745,000.00 |
| 8M | $1,605,000.00 |
| 8N | $1,890,000.00 |

| | |
|---|---|
| 9D | $1,770,000.00 |
| 10D | $1,795,000.00 |
| 11D | $1,820,000.00 |
| 12D | $1,845,000.00 |
| 17A | $1,795,000.00 |
| 17D | $2,955,000.00 |
| 18A | $1,835,000.00 |
| 18D | $3,000,000.00 |
| 19A | $1,875,000.00 |
| 19D | $3,045,000.00 |
| 20D | $3,090,000.00 |
| 21D | $3,135,000.00 |
| 22D | $3,180,000.00 |
| 23D | $3,225,000.00 |
| 24D | $3,270,000.00 |
| 25D | $3,315,000.00 |
| 26D | $3,360,000.00 |
| 27D | $3,405,000.00 |
| 28D | $3,450,000.00 |
| 29D | $3,495,000.00 |
| 30D | $3,540,000.00 |

Based on the restated purchase prices for the Residential Units as set forth above, the Total Purchase Price of the Offering is now $576,145,000.00.

2. Except as herein defined, all capitalized terms used in this Amendment which are defined in the Offering Plan, as amended, shall have the respective meaning ascribed to such terms in the Offering Plan, as amended.

3. The Offering Plan, as amended and supplemented by this Amendment, is incorporated

herein by reference with the same force and effect as if set forth at length.

4.    There are no other material changes to the terms of the Offering Plan, except those in this Amendment.

Dated: June 15 , 2007

                                        Sponsor:
                                        Site 16/17 Development LLC
                                        By:  BPC Mezz LLC
                                        By:  Sheldrake Site 16/17 Development LLC,
                                             its Administrative Managing Member
                                        By:  Site 16/17 Investors LLC, its Manager


                                        By:_____
                                             J. Christopher Daly, Managing Member

## SEVENTH AMENDMENT TO THE OFFERING PLAN

### Premises:

**Riverhouse One Rockefeller Park**
**One and Two River Terrace**
**Battery Park City**
**New York, New York 10282**

**This Amendment Modifies And Supplements The Terms Of The Offering Plan Dated Approximately August 24, 2006, And Should Be Read In Conjunction with Said Plan, as Amended.**

1. The Offering Plan is hereby amended to set forth that as of the date that this 7th Amendment to the Offering Plan, as amended, is accepted for filing by the Department of Law of the State of New York, all down payments for the purchase of Residential Units pursuant to Purchase Agreements executed on or after the filing date of this Amendment will be placed by the Escrow Agent in a segregated escrow account as required by the Offering Plan, as amended, with Signature Bank N.Y. New deposits shall be made at the branch of Signature Bank N.Y., located at 261 Madison Avenue, New York, New York 10017. Further, all down payments for the purchase of Units pursuant to Purchase Agreements executed prior to the filing of this Amendment shall be transferred to the Signature Bank N.Y. branch located at 261 Madison Avenue, New York, New York 10017.

Attached hereto and made a part hereof as Exhibit "A" to this Amendment is a copy of the escrow agreement executed by Sponsor and the Escrow Agent to reflect the change that Signature Bank N.Y. shall be the new bank holding all deposits.

The authorized signatories on the new escrow account shall be John D'Agostino, Michael J. Levine, Wayne R. Landesman, Bettina M. Miraglia and Jose M. Rivera, all of which are partners of the Escrow Agent.

This escrow account will be interest-bearing and unless the Purchaser defaults, interest will be credited to the Purchaser at closing. The interest rate to be earned will be the prevailing rate from this type of account as stated by Signature Bank N.Y. at the time of the initial deposit and as provided thereafter. Such interest rate as stated in April, 2007 by Signature Bank N.Y. is approximately 4%. Interest will begin to accrue as of the date the deposit of the down payment clears and is posted by Signature Bank N.Y. to the escrow account. No

fees of any kind from the account principal or any interest earned thereon may be deducted. Sponsor shall bear any administrative cost for maintenance of the account. All other requirements regarding the escrow deposits and the Escrow Agent shall remain the same.

2.  Sponsor has obtained a ruling from the IRS indicating that the PILOT obligations to be made pursuant to the Site Lease to BPCA (or to City should it reacquire the Premises) constitute real property taxes allowable as a deduction to the payor under §164 of the Internal Revenue Code.

    Annexed hereto as Exhibit "B" is a copy of the IRS Ruling of the Internal Revenue Code.

3.  The Offering Plan, as amended is hereby amended to set forth the combining of Units 9J and 9K into one Unit, Unit 9J.

    The Offering Plan, as amended is hereby amended to set forth the combining of Units 14J and 14K into one Unit, Unit 14J.

    The Offering Plan, as amended is hereby amended to set forth the combining of Units 16D and 16E into one Unit, Unit 16D.

    The combining of the above Residential Units shall result in the Sponsor now offering two hundred sixty-one (261) Residential Units. Pursuant to Article 6 Section 15.6 of the Condominium's By-Laws the hallway in front of former Unit 16D and 16E on the 16th floor which is a Common Element is being used exclusively by Unit 16E. The owner of Unit 16E must comply with, including but not limited to, all terms and conditions of said provisions.

    Annexed hereto as Exhibit "C" are the Revised Schedule A and the Revised Schedule B to the Condominium Declaration.

    The Plan is hereby amended in all relevant sections to set forth that the Building shall now contain two hundred sixty-one (261) Units.

4.  Except as herein defined, all capitalized terms used in this Amendment which are defined in the Offering Plan, as amended, shall have the respective meaning ascribed to such terms in the Offering Plan, as amended.

5.  The Offering Plan, as amended and supplemented by this Amendment, is incorporated herein by reference with the same force and effect as if set forth at length.

G:\Rivera\16 & 17 Battery Park City\Amendments\7th Amendment\7th Amendment.wpd

6. There are no other material changes to the terms of the Offering Plan, except those in this Amendment.

Dated: April 21, 2007

Sponsor:
Site 16/17 Development LLC
By: BPC Mezz LLC
By: Sheldrake Site 16/17 Development LLC,
     its Administrative Managing Member
By: Site 16/17 Investors LLC, its Manager

By: _____
    J. Christopher Daly, Managing Member

# ËXHIBÏT "A"

**EXHIBIT "14"**

**ESCROW AGREEMENT FOR OFFERING PLAN**

## ESCROW AGREEMENT FOR OFFERING PLAN

AGREEMENT made this ___ day of April, 2007, between Site 16/17 Development LLC ("SPONSOR") as sponsor of the Offering Plan (defined below) and D'Agostino, Levine & Landesman, L.L.P. ("ESCROW AGENT") as escrow agent.

WHEREAS, SPONSOR is the sponsor of an offering plan to convert to condominium ownership the premises to be known as One & Two River Terrace a/k/a Aquaterre located at One and Two River Terrace, Site 16/17, Battery Park City, New York, New York (the "Offering Plan"); and

WHEREAS, D'Agostino, Levine & Landesman, L.L.P. is authorized to act as an escrow agent hereunder in accordance with General Business Law ("GBL") Section 352-e(2-b) and the Attorney General's regulations promulgated thereunder, and

WHEREAS, SPONSOR desires that ESCROW AGENT act as escrow agent for deposits and payments by purchasers and subscribers, pursuant to the terms of this Agreement.

NOW, THEREFORE, in consideration of the covenants and conditions contained herein and other good and valuable consideration, the parties hereby agree as follows:

A. ESTABLISHMENT OF THE ESCROW ACCOUNT.

4. ESCROW AGENT has established a master escrow account for the purpose of holding deposits, downpayments, advances or payments ("Deposits") made by purchasers or subscribers ("Purchasers") pursuant to the Offering Plan at Signature Bank N.Y. at its branch located at 261 Madison Avenue, New York, New York ("Master Escrow Account"). The account number is _____.

5. All Deposits will be placed initially in a non-interest bearing checking portion of the Master Escrow Account. At such time as ESCROW AGENT receives a completed and signed Form W-9 (Request for Taxpayer Identification Number) or Form W-8 (Certificate of Foreign Status), as applicable, from a Purchaser, the Deposit of such Purchaser will be promptly transferred from the non-interest bearing checking portion of the Master Escrow Account into an individual interest bearing sub-escrow savings account in the name of such Purchaser. At such time as the Deposit is released, the Deposit will be transferred from the individual sub-escrow savings account to the non-interest bearing checking portion of the Master Escrow Account so that checks may be drawn thereon.

6. Partners or attorneys employed by ESCROW AGENT are the sole signatories on the Master Escrow Account.

7. The Master Escrow Account is not an IOLA account established pursuant to Judiciary Law Section 497.

8. All interest will be credited to Purchaser at such time as: (i) there is a closing under the Contract of Sale (defined below), or (ii) Purchaser is entitled to a return of the Deposit. All interest will be credited to SPONSOR only in the event Purchaser defaults.

## B. DEPOSITS INTO THE ESCROW ACCOUNT.

1. All funds received from Purchasers prior to closing, whether in the form of checks, drafts, money orders, wire transfers, or other instruments which identify the payor, shall be deposited into the Master Escrow Account. All instruments to be deposited into the Master Escrow Account shall be made payable directly to the order of "D'Agostino, Levine & Landesman, L.L.P., as Escrow Agent." Endorsed instruments will not be accepted. Any instrument payable other than as required hereby, and which cannot be deposited into the Master Escrow Account, shall be returned to the Purchaser promptly, but in no event more than five (5) business days following receipt of such instrument by ESCROW AGENT. In the event of such return of finds, the instrument shall be deemed not to have been delivered to ESCROW AGENT pursuant to the terms of this Agreement.

2. Within ten (10) business days after tender of the Deposit submitted with the purchase agreement or subscription agreement ("Contract of Sale"), ESCROW AGENT shall notify the Purchaser of the deposit of such finds in the Master Escrow Account, provide the account number, and disclose the initial interest rate. If the Purchaser does not receive notification of such deposit within fifteen (15) business days after tender of the Deposit, the Purchaser may cancel the Contract of Sale and rescind within ninety (90) days after tender of the Deposit, or may apply to the Attorney General for relief. Rescission may not be afforded where proof satisfactory to the Attorney General is submitted establishing that the Deposit was timely deposited in accordance with the Attorney General's regulations and requisite notice was timely mailed to the Purchaser.

## C. RELEASE OF FUNDS.

1. Consummation of the Offering Plan does not relieve SPONSOR of its fiduciary obligations pursuant to GBL Section 352-h.

2. ESCROW AGENT shall continue to hold the Deposit in escrow until otherwise directed in (a) a writing signed by both Sponsor and Purchaser or (b) a determination of the Attorney General or (c) a judgment or order of a court of competent jurisdiction or until released pursuant to the regulations of the Attorney General pertaining to release of escrowed funds.

3. SPONSOR shall not object and will be deemed to have agreed, without the need for a written agreement, to the release of the Deposit to: (a) a Purchaser who timely rescinds in accordance with an offer of rescission contained in the Offering Plan or an amendment to the Offering Plan, or (b) all Purchasers after an amendment abandoning the Offering Plan is accepted for filing by the Department of Law.

4. In the event SPONSOR and a Purchaser close title under the Contract of Sale, ESCROW AGENT shall be entitled to release the Deposit to SPONSOR without the need for a written agreement from Purchaser. Upon the closing of title under the Purchase Agreement, the Escrow Agent shall be deemed authorized and directed, and the Escrow Agent has agreed, to disburse an amount equal to three percent (3%) of the Gross Sales Price to Landlord by wire transfer of immediately available funds pursuant to wire transfer instructions to be furnished by Landlord, or by official bank check, or certified check, or attorney escrow check, drawn on or issued by a bank which is a member of the New York Clearing House Association, payable directly to the order of Landlord, and bearing no endorsements.

5. Except as otherwise set forth above, if there is no written agreement between the parties to release the Deposit, ESCROW AGENT shall not pay the finds to SPONSOR until ESCROW

AGENT has given the Purchaser written notice of not fewer than ten (10) business days. Thereafter, the Deposit may be paid to SPONSOR unless the Purchaser has made application to the Department of Law pursuant to the. dispute resolution provisions contained in the Attorney General's regulations and ESCROW AGENT has received notice from the Purchaser in accordance with such provisions.

D. RECORDKEEPING.

1. ESCROW AGENT shall maintain all records concerning the Master Escrow Account for seven years after release of the finds.

2. Upon the dissolution of ESCROW AGENT, the former partners or members of the firm shall make appropriate arrangements for the maintenance of these records by one of the partners or members of the firm or by the successor firm and shall notify the Department of Law of such transfer.

3. ESCROW AGENT shall make available to the Attorney General, upon request, all books and records of ESCROW AGENT relating to the funds deposited and disbursed hereunder.

E. GENERAL OBLIGATIONS OF ESCROW AGENT.

1. ESCROW AGENT shall maintain the Master Escrow Account under its direct supervision and control.

2. A fiduciary relationship shall exist between ESCROW AGENT and Purchasers, and ESCROW AGENT acknowledges its fiduciary obligations.

3. ESCROW AGENT shall not be liable to SPONSOR for any error in judgment, mistake of fact or law or for any act or omission on ESCROW AGENT'S part, including, without limitation, any act or omission which permits a Purchaser to rescind a Contract of Sale, unless taken or suffered in bad faith or in willful disregard of this Agreement or involving gross negligence on the part of ESCROW AGENT.

4. ESCROW AGENT shall be permitted to act as counsel for SPONSOR in any dispute as to the disbursement of the Deposit or any other dispute between SPONSOR and a Purchaser whether or not ESCROW AGENT is in possession of the Deposit and continues to act as ESCROW AGENT.

5. ESCROW AGENT may rely upon any paper or document which may be submitted to it in connection with its duties under this Agreement and which is believed by ESCROW AGENT to be genuine and to have been signed or presented by the proper party or parties and shall have no liability or responsibility with respect to the form, execution or validity thereof.

6. ESCROW AGENT may consult with legal counsel selected by it and the opinion of such counsel shall be full and complete authorization and protection to ESCROW AGENT in respect of any action taken or omitted in good faith by ESCROW AGENT hereunder in accordance with the opinion of such counsel.

F. RESPONSIBILITIES OF SPONSOR

1. SPONSOR agrees that SPONSOR and its agents, including any selling agents, shall deliver all Deposits received by them prior to closing of an individual transaction to a designated attorney who is a member of or employed by ESCROW AGENT within two (2) business days of tender of the Deposit by a Purchaser, using such transmittal forms as required by ESCROW AGENT from time to time.

2.	SPONSOR agrees that it shall not interfere with ESCROW AGENT'S performance of its fiduciary duties and compliance with the Attorney General's regulations.

3.	SPONSOR shall obtain or cause the selling agent under the Offering Plan to obtain a completed and signed Form W-9 or W-8, as applicable, from each Purchaser and deliver such form to ESCROW AGENT together with the Deposit and Contract of Sale.

G.	TERMINATION OF AGREEMENT.

1.	This Agreement shall remain in effect unless and until it is canceled by either:

(a)	Written notice given by SPONSOR to ESCROW AGENT of cancellation of designation of ESCROW AGENT to act in said capacity, which cancellation shall take effect only upon the filing of an amendment to the Offering Plan with the Department of Law providing for a successor escrow agent; or

(b)	The resignation of ESCROW AGENT upon giving notice to SPONSOR of its desire to so resign. Such resignation shall take effect on the date set forth in the notice from ESCROW AGENT, except such resignation shall take effect only upon the filing of an amendment to the Offering Plan with the Department of Law providing for a successor escrow agent with respect to Deposits held in the Master Escrow Account on the date of such resignation, or

(c)	all shares or units offered by SPONSOR pursuant to the Offering Plan have been sold and no Deposits of Purchasers from SPONSOR remain in the Master Escrow Account.

2.	Upon termination of the duties of ESCROW AGENT as described in paragraph 7.1 (a) or (b) above, ESCROW AGENT shall deliver any and all funds held by ESCROW AGENT in escrow and any and all contracts or documents maintained by ESCROW AGENT relating to such funds to the new escrow agent.

H.	SUCCESSORS AND ASSIGNS.
This Agreement shall be binding upon SPONSOR and ESCROW AGENT and their respective successors and assigns.

I.	GOVERNING LAW.
This Agreement shall be construed in accordance with and governed by the laws of the State of New York.

J.	ESCROW AGENT'S COMPENSATION.
SPONSOR agrees to pay ESCROW AGENT for services rendered by its attorneys and paralegals and expenses incurred by ESCROW AGENT in connection with this Agreement, including, without limitation, disputes arising with respect to the Deposit. SPONSOR shall not be charged with any administrative costs for maintenance of the Master Escrow Account. ESCROW AGENT'S fees and disbursements shall neither be paid by SPONSOR from the Deposit nor deducted from the Deposit by any financial institution under any circumstance.

K.	SEVERABILITY.
If any provision of this Agreement or the application thereof to any person or circumstance is determined to be invalid or unenforceable, the remaining provisions of this Agreement or

the application of such provision to other persons or to other circumstances shall not be affected thereby and shall be valid and enforceable to the fullest extent permitted by law.

L.    INDEMNIFICATION.
SPONSOR agrees to defend, indemnify and hold ESCROW AGENT harmless from and against all costs, claims, expenses and damages incurred in connection with or arising out of this Agreement or the performance or non-performance of ESCROW AGENT'S duties under this Agreement, except with respect to actions or omissions taken or suffered by ESCROW AGENT in bad faith or in willful disregard of this Agreement or involving gross negligence of Escrow Agent. This indemnity includes, without limitation, disbursements and attorneys fees either paid to retain attorneys or representing the hourly billing rates with respect to legal services rendered by ESCROW AGENT to itself.

M.    ENTIRE AGREEMENT.
This Agreement, read together with GBL Section 352-e(2-b) and the Attorney General's regulations, constitutes the entire agreement between the parties with respect to the subject matter hereof

IN WITNESS WHEREOF, the undersigned have executed this Agreement as of the day and year first written above.

ESCROW AGENT:

D'Agostino, Levine & Landesman, L.L.P.

By: _____
Michael J. Levine, Partner

SPONSOR:

Site 16/17 Development LLC
By:   BPC Mezz LLC
By:   Sheldrake Site 16/17 Development LLC,
       its Administrative Managing Member
By:   Site 16/17 Investors LLC, its Manager

By: _____
J. Christopher Daly, Managing Member