EXHIBIT "B"

**Internal Revenue Service**

Index Number: 164.00-00

Mr. J. Christopher Daly
Site 16/17 Development LLC
708 Third Avenue, 35th Floor
New York, NY 10017

Department of the Treasury
Washington, DC 20224

Third Party Communication: None
Date of Communication: Not Applicable

Person To Contact:
Erika C. Reigle, ID No. 50-28295
Telephone Number:
202-622-4950.
Refer Reply To:
CC:ITA:B03
PLR-154548-06
Date: FEB 1 2 2007

TY: 2006

Legend

| Taxpayer | = | Site 16/17 Development LLC |
|---|---|---|
| State | = | New York |
| Project Area | = | Battery City Park |
| Authority | = | Battery City Park Authority |
| Act | = | Battery Park City Act |
| City | = | New York, NY |
| Corporation | = | New York State Urban Development Corporation |
| Subsidiary | = | Battery Park City Development Corporation |
| X | = | 264 |
| Y | = | 5 |

Dear Mr. Daly:

This responds to your request of November 21, 2006, for a private letter ruling that certain payments in lieu of taxes ("PILOT") are deductible under §164 of the Internal Revenue Code as real property taxes under the circumstances described.

## FACTS

The facts are represented to be as follows: The taxpayer is a limited liability company created and existing under the laws of State for the purpose of constructing a mixed-use building at the Project Area. The Authority is a public benefit corporation created by the legislature of the State. The Authority was created for the purposes of financing, constructing and operating a planned community development in the Project Area. The legislative purpose was set forth in the Act as follows:

the creation in such area... of a mixed commercial and residential community, with adequate utilities systems and civic and public facilities such as schools, open public spaces, recreational and cultural facilities, is necessary for

the prosperity and welfare of the people of ..., and is a public use and public
purpose for which tax exemptions may be granted...

[T]he creation of ... [Authority] and the carrying out of its corporate
purposes is in all respects for the benefit of the people of ... and is a public
purpose, and ... [Authority] shall be regarded as performing a governmental
function in the exercise of the powers conferred upon it ... and shall be required
to pay no taxes upon any of the properties acquired by it or under its jurisdiction
or control or supervision or upon its activities.

Thus, under the Authority's originating legislation, the Authority is exempt from
real property taxes on property in the Project Area.

The Project Area was originally owned by the City, which leased the Project Area
to the Authority. This lease incorporates a master plan which governs the development
of the Project Area.

Corporation is an agency of State. In order to expedite development of the
Project Area, Corporation exercised its power of eminent domain to acquire fee simple
absolute title to the Project Area, subject to the lease above. Subsequently,
Corporation conveyed title to the Subsidiary, subject to the lease above. The
aforementioned lease, as amended, was further amended by the Authority and the
Subsidiary, and restated as the Master Lease. The Subsidiary then conveyed fee
simple absolute title to the Authority.

However, pursuant to the terms of the deed and the Master Lease, there is no
merger of the fee estate in the Project Area and the leasehold estate created by the
Master Lease, even though the Authority became both the landlord and the tenant. At
the time of the original acquisition of the Project Area by the Corporation, City was
granted the right to reacquire for a nominal sum all rights of the Corporation, Subsidiary
and Authority in the Project Area provided that the City repays the indebtedness
incurred in respect of the Project Area.

The Act provides that each sublease of the property, i.e. of a parcel in the Project
Area, that is to be improved with housing shall provide for the payment to the Authority
of the applicable amount of tax equivalency payments. Tax equivalency payments are
required by the Act that created Authority, which provides:

If the underlying parcel is exempt from real property taxes ... the
residential lease for such underlying parcel shall provide for the payment by the
owner of such residential lease to the [Authority] of annual or other periodic
amounts equal to the amount of real property taxes that otherwise would be paid
or payable with respect to such underlying parcel, after giving effect to any real
property tax abatements and exemptions, if any, which would be applicable

thereto ... [if statutory provisions exempting the property from real property taxes] were not applicable to such underlying parcel.

If the City reacquires the Project Area, it will be required to impose tax equivalency payment obligations.

The tax equivalency payments that apply to the type of housing that Taxpayer is constructing in the Project Area is the amount equal to the product of the assessed value of the parcel and any improvements multiplied by the City's real property tax rate, less the amount of any tax exemptions or abatements that would be available if the fee was not owned by a tax exempt entity.

Authority leases land (under the "Site Lease") in the Project Area ( the "Property") to Taxpayer for a period coterminous with the Master Lease. The Site Lease requires Taxpayer to construct a building containing approximately X residential units and Y commercial units on the property.

The Taxpayer intends to subject its leasehold estate in the property to condominium ownership under State law and to assign to condominium purchasers leasehold interests in the apartment units and proportionate individual leasehold interests in the common elements of the buildings. Under the condominium laws of State, once any part of the Project Area becomes subject to condominium ownership the unit owners are personally liable for taxes assessed. The law requires common expenses to be charged to the unit owners according to their respective common interests.

The Site Lease provides that the common charges include a rental payment, part of which is PILOT. The amount of PILOT is equal to the tax equivalency payments as defined and adjusted in the Site Lease. After the property is converted to condominium ownership a board of managers designated or elected by unit owners will administer the affairs of the condominium including the determination of common charges. The common charges will be payable by each unit owner to the board of managers. The board of managers in turn is required to pay the rental due under the Site Lease to Authority.

The Master Lease and the Site Lease thus provide the collection vehicles for the tax equivalency payment and corresponding PILOT obligations which are, however, authorized and imposed under specific statutory authority.

Authority will commingle PILOT with other monies it receives from the Project Area. Authority may disburse the funds for the following purposes:

(a) to meet the debt service on bonds issued by the Authority, the proceeds of which have been and will be used to construct the above described municipal facilities and services in the Project Area;

(b) to maintain the various reserves and sinking funds to be maintained under the Authority's Bond Resolution; and

(c) to pay the Authority's operating and administrative expenses.

Authority revenues attributable to PILOT that exceed those needed for these or other public purposes generally will be remitted to various City housing projects. The assignment of such excess revenues is a public purpose for which monies may be granted.

## RULINGS REQUESTED

1. The PILOT payments to be made pursuant to the Site Lease to the Authority (or to City should it reacquire the Project Area) will constitute real property taxes allowable as a deduction to the payor under § 164.

2. That following Taxpayer's submission of the leasehold estate in the property to condominium ownership, the unit owners will be entitled to deduct as real property taxes under § 164 that portion of the common charges paid by them to the board of managers as applied by the board of managers towards the PILOT obligations.

A taxpayer may not rely on a private letter ruling that has been issued to another taxpayer. Rev. Proc. 2006-1, 2006-1 I.R.B. 6, § 11.02. Therefore, a private letter ruling addresses only the tax liability of taxpayers who are party to the ruling request. However, Taxpayer will be the owner of all units in the condominium from the time its interest in the property is submitted to condominium ownership until the units are sold, and as such, will be liable for PILOT until the units are sold. We consider Taxpayer's second ruling request in that context.

## LAW AND ANALYSIS

Section 164 allows as a deduction the state, local and foreign real property taxes paid or accrued in the taxable year. Section 1.164-3(b) of the Income Tax Regulations defines real property taxes as taxes imposed on interests in real property that are levied for the general public welfare. Assessments for local benefits are not treated as real property taxes. See § 1.164-4.

Whether a particular charge is a tax within the meaning of § 164 depends on its true nature as determined under federal law. The designation given by local law is not determinative. A charge will constitute a tax if it is an enforced contribution, exacted pursuant to legislative authority in the exercise of the taxing power, and imposed and collected for the purpose of raising revenues to be used for public or governmental purposes. Rev. Rul. 71-149, 1971-1 C.B. 103; Rev. Rul. 61-152, 1961-2 C.B. 42. Rev. Rul. 71-149 involved tax equivalency payments to the New York City Educational Construction Fund, a public benefit corporation, by a cooperative housing corporation.

The payments were applied to debt service on obligations funding public school construction. The ruling holds that the cooperative housing corporation may deduct the payments as real property taxes under § 164 because (1) the payments are measured by and are equal to the amounts imposed by the regular taxing statutes, (2) the payments are imposed by a specific state statute (even though the vehicle of a lease agreement is used), and (3) the proceeds are designated for a public purpose rather than for some privilege, service, or regulatory function, or for some other local benefit tending to increase the value of the property upon which the payments are made. Accordingly, each tenant-stockholder of the cooperative housing corporation may deduct the payments in the amount of the stockholder's proportionate share.

The PILOT obligations in this case also satisfy the three-prong test of Rev. Rul. 71-149 (1) PILOT are imposed at the same general rate at which real property taxes are imposed; (2) PILOT are imposed by state statute although the law uses the vehicle of leasing agreements; and (3) PILOT may only be used by Authority for public purposes, including debt service of bonds issued to construct municipal facilities and services, and payment of operating and administrative expenses.

Accordingly, we hold as follows:

1. The PILOT obligations to be made pursuant to the Site Lease to Authority (or to City should it reacquire the Project Area) constitute real property taxes allowable as a deduction to the payor under § 164.

2. Following the submission of the leasehold estate in the property to condominium ownership, Taxpayer as a unit owner will be entitled to deduct as real property taxes under § 164 the portion of the common charges that Taxpayer pays to the board of managers and that are applied by the board of managers to the PILOT obligations.

Except as expressly provided herein, no opinion is expressed or implied concerning the tax consequences of any aspect of any transaction or item discussed or referenced in this letter.

This ruling is directed only to the taxpayer requesting it. Section 6110(k)(3) of the Code provides that it may not be used or cited as precedent.

In accordance with the Power of Attorney on file with this office, a copy of this letter is being sent to your authorized representative.

A copy of this letter must be attached to any income tax return to which it is relevant. Alternatively, taxpayers filing their returns electronically may satisfy this requirement by attaching a statement to their return that provides the date and control number of the letter ruling.

The rulings contained in this letter are based upon information and representations submitted by the taxpayer and accompanied by a penalty of perjury statement executed by an appropriate party. While this office has not verified any of the material submitted in support of the request for rulings, it is subject to verification on examination.

Sincerely,

Christopher F. Kane
Branch 3, Branch Chief
(Income Tax & Accounting)

cc:　Mr. Wayne R. Landesman

Area Counsel 1 (Manhattan)
(Small Business/Self-Employed)

EXHIBIT "C"