Site 16/17 Development LLC
June 21, 2006
Page 2

rendering this opinion, we have assumed that the Plan is the document pursuant to which owners of Units will acquire their Units and that the relevant facts are as set forth therein. Based on representations made to the Firm by Site 16/17 Development LLC, we have also assumed that (I) the useful life of the Building is not in excess of 45 years and (ii) no portion of the Base Rent or of the Rent payable under the Lease is attributable to the Building.

Under Code Section 163(h), an individual taxpayer is allowed a deduction (subject to the limitations discussed below) for interest paid or accrued during the taxable year on indebtedness secured by a "qualified residence". The term "qualified residence" means a first home which is a principal residence within the meaning of Code Section 121 or a second home which is used and designated as a residence. Prior to May 6, 1997, the determination of whether a residence was a principal residence was determined in accordance with the meaning in Code Section 1034. However, Code Section 1034 was repealed by the Taxpayer Relief Act of 1997 (Public Law 105-34) and the Taxpayer Relief Act of 1997 stated that the term "qualified residence" for purposes of Code Section 163(h) was to be determined in accordance with the meaning in Code Section 121. Treasury Regulation § 1.121-1 provides relevant factors in determining a taxpayer's principal residence, and the meaning of principal residence is similar to that in former Code Section 1034 and the Treasury Regulations thereunder.

In Revenue Ruling 64-31, 1964-1 (Part I) C.B. 300, the Internal Revenue Service held that a condominium unit constituted a residence for purposes of Code Section 1034. In that case, the purchaser received legal title in fee simple to a one-family unit in a multi-unit structure coupled with ownership of an undivided interest in the land and common areas. The procedure for organizing the project and conveying ownership was accomplished by (I) the execution and recording of a declaration that described the project area and the percentage of common elements pertaining to each apartment, along with administrative regulations governing the relationship among the owners, (2) the recording of an apartment survey describing the apartments and identifying each by a number, and (3) the execution and recording of individual deeds for each apartment. None of the administrative regulations contained in the declaration could deprive a purchaser of his title to the apartment. A purchaser was free to sell or lease his apartment at any price, subject only to the limitation that he give a first option to buy or lease on equal terms to the other owners. A purchaser was liable to the local tax authority for the tax assessment with respect to his apartment and had the right to place an individual mortgage on his apartment.

The facts in the present case are similar to those described in Revenue Ruling 64-31, supra. The premises will be submitted to condominium ownership by the execution and recording of a declaration and floor plan of the Units and by the grant of individual Unit assignment agreements to purchasers of each of the Units. A Unit Owner may not be deprived of his interest in the Unit during the period of the Lease except in the event of an uncured violation of either the By-Laws or

Site 16/17 Development LLC
June 21, 2006
Page 3

the Lease. He may place an individual mortgage on his Unit and is free to sell or lease his Unit at any price subject only to the limitation that he give a first option to buy or lease on equal terms to the Residential Board on behalf of the other Unit Owners. Unit Owners would be liable to the local tax authority for the tax assessment with respect to their Units if the Project Area were not exempt from real estate tax. Nevertheless, as discussed below, each Unit Owner is liable to the Authority for the PILOT with respect to his Unit.

The only difference between the facts in this case and those described in Revenue Ruling 64-31, supra, is that, instead of a fee simple interest, a Unit Owner will acquire a leasehold interest in his Unit. The issue is whether, in light of cases which have held that a taxpayer is required to own a residence in order to qualify under Code Section 1034, a Unit Owner will be treated as the owner of his Unit. See R.E. Boesel, Jr. v. Commissioner, 65 T.C. 378 (1975) and Rev. Rul. 72-266, 1972-1 C.B. 227.

In determining ownership of property for tax purposes, courts have looked at the objective economic realities of a transaction rather than to the particular form employed by the parties. Thus, courts have refused to permit the transfer of formal legal title to shift the incidence of taxation attributable to the ownership of property. See Commissioner v. Sunnen, 333 U.S. 591 (1948); Helvering v. Clifford, 309 U.S. 331 (1940); Helvering v. Lazarus & Co., 308 U.S. 252 (1939). See also footnotes in R.E. Boesel, Jr., supra, at p. 386.

In the case of Offutt Housing Company v. County of Sarpy et al., 351 U.S. 253 (1953), a lessee of land under a seventy-five year lease erected improvements which had an estimated useful life of thirty-five years. The lease provided that upon expiration or termination of the lease, all improvements would remain the property of the lessor without compensation. The lessee was required to pay a nominal rental on the land. The Supreme Court held that the lessor's technical title to the improvements was a mere "paper title".

In Revenue Ruling 62-178, 1962-2 C.B. 91, the Internal Revenue Service considered whether, for tax purposes, a tenant was the owner of a building which it constructed with its own funds on land leased for 99 years where the building had an estimated life of only 50 years. Under the lease, the building became the property of the landlord as soon as erected and was to be surrendered to the landlord at the end of the lease term. The landlord, however, received no rent attributable to the building during the lease term. Because the tenant had full enjoyment of the entire worth of the building (its estimated life was shorter than the lease term and the landlord was not entitled to any rent with respect to the building), the Internal Revenue Service ruled that the tenant would be treated as the owner of the building.

Site 16/17 Development LLC
June 21, 2006
Page 4

The facts in the present case are analogous to those discussed in Offutt, supra and in Revenue Ruling 62-178, supra. The Unit Owners should be treated as having acquired a capital interest in the Building since their predecessor in interest, the Sponsor, has borne the entire cost of construction of the Building. The Unit Owners will enjoy occupancy rights and have the right to lease, mortgage and sell their Units during the period of the Lease. In addition, based on representations made to the Firm by Site 16/17 Development LLC (i) the useful life of the Building is substantially shorter than the term of the Lease and (ii) no portion of the Base Rent or of the Rent payable under the Lease will be attributable to the Building. Therefore, since a Unit Owner will have the full beneficial enjoyment of his Unit throughout its entire useful life, each Unit Owner should be deemed the owner of his Unit and, under the principles of Revenue Ruling 64-31, supra and Offutt, supra, each Unit should be eligible to qualify as a principal or secondary residence for purposes of Code Section 163. However, the determination of ownership is a question of fact and there can be no assurance that the Internal Revenue Service or a Court may not disagree with our conclusion.

The Internal Revenue Service has ruled privately that an assignable term estate of twenty-five years constituted a principal residence under Code Section 1034. Private Letter Ruling 8607034, November 18, 1985. See also Rev. Rul. 84-43, 1984-1 C.B. 27. There is no indication in the private ruling as to whether the assignable term estate was treated as an ownership interest or whether it merely embodied sufficient legal rights (i.e. to use, occupancy and assignability) to qualify for the special rollover treatment of Code Section 1034. Cf. Rev. Rul. 88-29, 1988-1 C.B. 75, Rev. Rul. 60-135, 1960-1 C.B. 298 and Rev. Rul. 55-37, 1955-1 C.B. 347. Nevertheless, the ruling holds that a term estate of significantly shorter duration than the term of the Lease did qualify as a principal residence. Although a private ruling may not be used as precedent, it does reflect the view of the Internal Revenue Service regarding the issues presented in the ruling.

A taxpayer generally is entitled to a deduction for Federal income tax purposes for interest with respect to a principal and one secondary residence (a "qualified residence") to the extent that the interest is attributable to indebtedness which is secured by the qualified residence and which (i) is incurred in acquiring, constructing or substantially improving the qualified residence (or, which constitutes a refinancing thereof to the extent that such indebtedness does not exceed the amount of the refinanced debt) ("acquisition indebtedness"), up to a maximum of $1,000,000 for any period, or (ii) is any indebtedness other than acquisition indebtedness, up to the excess of the fair market value of any one qualified residence over the amount of acquisition indebtedness with respect to such residence ("home equity indebtedness"), but not to exceed $100,000 in the aggregate for all qualified residences of the taxpayer in any period.

Accordingly, based on the foregoing (including representations made to the Firm by Site 16/17 Development LLC), it is our opinion that an owner of a Unit who uses the Unit as a qualified residence will be entitled, under current law, to deduct from his gross income, for Federal income

Site 16/17 Development LLC
June 21, 2006
Page 5

tax purposes, interest paid or accrued by him on (i) acquisition indebtedness incurred with respect to his Unit to the extent that such indebtedness, when added to the amount of acquisition indebtedness incurred with respect to a second qualified residence (if any), does not exceed $1,000,000 and (ii) home equity indebtedness with respect to his Unit to the extent that such indebtedness, when added to the amount of home equity indebtedness incurred with respect to a second qualified residence (if any), does not exceed $100,000. Special rules regarding these limitations apply to purchasers who are married and file separate income tax returns. Purchasers are urged to consult their tax advisers regarding their application to them, as well as regarding the deductibility of interest with respect to their Units for alternative minimum tax purposes (which at present is subject to rules different than those described above for regular tax purposes). In addition, Unit Owners should note that special limitations may apply to the deductibility of points and prepaid interest, if any, on their mortgage loans.

It is also our opinion that a Unit Owner who itemizes his deductions will be entitled to deduct, for Federal (regular) income tax purposes, any PILOT he pays to the Landlord. We note that PILOT should be treated as real estate taxes under Code Section 164 because (i) PILOT is measured by and equal to the amount of real estate taxes imposed by the regular taxing statute, (ii) PILOT is imposed by specific state statute, even though a leasing agreement was utilized as the vehicle for collection, and (iii) the proceeds of PILOT are designated for a public purpose, rather than for some privilege, service or regulatory function, or for some other local benefit tending to increase the value of the property upon which the payments are imposed. See Rev. Rul. 71-49, 1971-1 C.B. 103. See also Private Letter Ruling 9150056, September 12, 1991, Private Letter Ruling 9029057, April 25, 1990, Private Letter Ruling 8919002, January 31, 1989, Private Letter Ruling 8811028, December 17, 1987, Private Letter Ruling 8707043, November 18, 1986, and Private Letter Ruling 8638040, June 23, 1986 in which the Internal Revenue Service held, in circumstances similar to those in the present case, that owners of leasehold condominium units may deduct PILOT. However, in the event the Sponsor applies for a private ruling regarding the deductibility of PILOT, our opinion regarding PILOT will be subject to the receipt of a favorable ruling on this issue. In addition, no deduction for PILOT will be permitted for purposes of the Federal alternative minimum tax.

Each owner of a Unit who uses such Unit as a residence will generally be entitled to the same deduction for interest and real estate taxes paid or accrued with respect to his Unit for New York State and New York City income tax purposes as is allowed for Federal (regular) income tax purposes. However, under New York State and New York City income tax law, itemized deductions, such as interest and real estate tax deductions, are subject to reduction by as much as 50% in the case of individuals having income exceeding certain prescribed levels. Furthermore, purchasers should consult their tax advisers to determine the application, if any, of the New York State and New York City minimum tax to the deduction for interest and real estate taxes with respect to their Units.

Site 16/17 Development LLC
June 21, 2006
Page 6

If the Condominium qualifies as a homeowners association within the meaning of Section 528 of the Code, it may elect not to be subject to Federal income tax on amounts received as membership dues, fees or assessments from Unit Owners. However, even if the election is made, the Condominium will remain liable for Federal income tax on any taxable income it may have from other sources such as commercial rental income from laundry services and interest earned on any reserve fund (less expenses directly connected with the production of such income).

To qualify as a homeowners association, the Condominium must meet all of the following conditions: (1) it must be organized and operated to provide for the acquisition, construction, management, maintenance and care of association property, (2) at least 60% of its gross income for each taxable year must consist solely of amounts received as membership dues, fees or assessments from Unit Owners, (3) 90% or more of its expenditures for each taxable year must be made for the acquisition, construction, management, maintenance and care of association property, (4) no part of its net earnings can inure to the benefit of any private shareholder or individual, and (5) at least 85% of the total square footage of all Units within the condominium must be used by individuals for residential purposes. See Treasury Regulation § 1.522-4(b). The qualification of an organization under the provisions of Section 528 is to be determined annually at the close of each taxable year and it is possible therefore that if the Condominium does not qualify in one year it may nevertheless qualify in one or more future years.

It is our opinion that the Condominium will not qualify as a homeowners association. Assuming that the Condominium does not qualify as a homeowners association or if it does qualify but chooses not to make the necessary election, the present state of the law is uncertain as to the proper reporting and tax treatment of any nonmembership and possibly membership income of the Condominium in excess of appropriate deductions and credits. It is unclear whether each Unit Owner should report his proportionate share of nonmembership and possibly membership income (and the deductions attributable thereto) directly on his own tax return, or whether the Condominium itself will be treated as a separate entity taxable as a corporation. In the latter instance, any earnings and profits remaining after the payment of taxes by the Condominium may be treated as a dividend to Unit Owners. If the Condominium were treated as a separate corporation, it would be subject to Federal, New York State and New York City corporate taxes.

We note that under the terms of the Plan, the Sponsor will contribute certain proceeds into the Security Fund. We are not aware of any authority dealing precisely with the tax treatment of this form of Security Fund arrangement. It is unlikely that any interest or income earned on the Security Fund as well as any interest or income earned on amounts required to be distributed to (and held by) the Board of Managers will be treated as taxable income to the Condominium or to the Unit Owners directly. It is also possible that the Condominium or Unit Owners may be taxed on the principal portion of the Security Fund when and if applied to Common Charges or distributed to the Unit

Site 16/17 Development LLC
June 21, 2006
Page 7

Owners. However, absent any direct authority on these issues, it is not possible to predict with certainty what the tax consequences of the Security Fund will be to the Condominium or to the Unit Owners

We express no views as to any Federal, New York State or New York City tax consequences other than those explicitly discussed in this opinion, or as to the tax status or tax consequences of the Plan under the laws of any other U.S. or foreign jurisdiction. Moreover, this opinion, while based on existing rules of law applied to the facts and documents referred to above, is not binding on the Internal Revenue Service or any court. No assurances can be given that the tax laws upon which we base this opinion will not change. In no event will the Sponsor, D'Agostino, Levine & Landsman, LLP, the Condominium Board, the Managing Agent, the Selling Agent or any other person be liable if there are changes in the facts on which we have relied in issuing this opinion or if there are changes in the applicable statutes, regulations, decisional law or Internal Revenue Service rulings on which we have relied which cause the Unit Owners not to be entitled to the income tax deductions described herein

We hereby authorize the use of this opinion, or a reproduction thereof, in the Plan and references to our name in the Plan.

Very truly yours,

*D'Agostino, Levine & Landesman, LLP*

D'AGOSTINO, LEVINE & LANDESMAN, LLP